# THE STATE OF NEVADA, Respondent, *v.* RUFUS B. ANDERSON, Appellant.

The State v. Millain, 3 Nev. 409, as to sufficiency of indictment, approved.

Sufficiency of Indictment for Murder. An indictment for murder charged that defendant, at a certain time and place, "without authority of law, and with malice aforethought, killed Noble T. Slocum, by shooting him with a pistol, contrary to the form of the statute," etc.: *Held*, to be sufficient without containing a special averment that by means of the shooting with the pistol aforesaid, the said Noble T. Slocum then and there died. *Lewis, J., dissenting.*

Peremptory Challenge after Juror Sworn. The allowance of a peremptory challenge to a juror who has been accepted and sworn is not a matter of right, and a refusal on the part of the Court to allow it is not error.

Swearing of Jurors before Panel Completed. It is the better practice in criminal cases to have the panel of jurors full before any of them are sworn in the case, so as to give parties the fullest benefit of peremptory challenges, but the law authorizes the swearing of jurors before the panel is complete, and such course is not error.

Previous Difficulties with other Persons in Murder Cases. On a trial for murder, evidence was offered that the defendant had been in difficulties with other persons than deceased, and was in a state of mental excitement just prior to the killing, and that he procured and carried the pistol with which the killing was done on account of those other difficulties, it being admitted that deceased had no connection with such other difficulties, and that defendant did not procure or carry the pistol with any design of using it against deceased : *Held*, irrelevant, and properly refused.

Ambiguous Instructions. It is no error to refuse an ambiguous instruction, calculated to mislead, and particularly when the Court has already given one on the same point, which was clear, explicit, and not open to objection.

Burden of Proof in Murder Cases. It is no error to refuse an instruction in a murder case, which is in conflict with the principle that after the killing has been satisfactorily established, the burden of proof to reduce the crime from murder to manslaughter is on the defendant.

Slight Assault no Excuse for Homicide. An instruction asked by defendant in a murder case that, if the jury should find that immediately previous to the killing deceased had assaulted the defendant, they should find defendant guilty of manslaughter : *Held*, properly refused, because a mere slight assault, such as the touch of a finger or the laying of a hand on the coat, would not be sufficient to reduce a homicide from murder to manslaughter.

False Definition of Murder. An instruction in a murder case, that in order to constitute the crime of murder there must be a willful, deliberate, premeditated, and malicious intention to take human life : *Held*, to give a false definition of murder and properly refused.

Instructions on Points Already Charged. Though it might in many cases in murder trials be just and humane in courts to point out defects existing in

18

instructions asked by defendant and allow them to be corrected; yet when it is sought to get instructions on points upon which the Court has already instructed the jury, it will be justified in refusing every one which is not technically correct.

CONSTITUTIONAL PROVISION AS TO CHARGING JURIES. The constitutional provision that "judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law," was intended to prevent judges from charging that facts testified to are or are not established; but was not intended to prevent, and does not prevent, them from charging what would be the legal effect of facts if found to be established.

ACTS OF JURORS NOT AMOUNTING TO MISCONDUCT. Where it appeared that during the progress of a murder trial and at a recess of the Court, the jury being in the court-room where there was an open window, one of the jurors asked a person outside of the window for a newspaper, which was handed to him with the answer "certainly," or "you are welcome;" and the juror looked over the Eastern dispatches, and then handed the newspaper back, and nothing further occured: *Held*, not sufficient misconduct of the jury to justify a new trial.

WAIVER OF OBJECTIONS TO JURORS BY FAILURE TO CHALLENGE. If a defendant in a criminal case accepts a juror without objection, whom he knows to have formed and expressed an unqualified opinion as to his guilt, he cannot after verdict raise this objection.

APPEAL from the District Court of the Sixth Judicial District, Lander County.

The defendant was convicted of murder in the first degree. Afterwards a motion for new trial was made and overruled, and defendant sentenced to be hanged on July 17th, 1868.

The homicide appears to have occurred at the house of A. S. and R. H. Eggleston, in the City of Austin, on May 5th, 1868, under substantially the following circumstances: On the evening of that day, while Noble T. Slocum, the deceased, the two Egglestons, A. V. McIntyre, his wife and child, were sitting in the house, Rufus B. Anderson, the defendant, and his mother, Mrs. Zottman, came in. Slocum and several of the others were sitting on beds which stood in the room. After passing a few friendly words, Anderson and his mother seated themselves. In a short time Mrs. Zottman said to Slocum, whom she claimed to be indebted to her for board and washing, " I came down to see if you could pay me some money." He made no response, and being somewhat deaf, appears not to have heard her. She then said, " Is it possible he did not hear me ?" Mr. Eggleston said he thought he did not.

She then said a second time to Slocum that she had come down to see if he could not let her have some money, as she was much in need of it ; and as he still did not answer, she rose, walked up to him, and said, " Mr. Slocum, I guess you didn't hear me." He then answered, Yes, he did. She said, " Well, can you let me have some money ?" He replied, "I haven't got any now." She then asked when he would have it, and he replied " I don't know ; I may have some to-morrow." She asked how much he thought he could let her have ; at the same time saying she thought he had been at work most of the time. He replied, " That makes no difference." She said, " Then you will let me have some soon, will you, Mr. Slocum ?" to which he rejoined, " Why, didn't I work for Zottman ?" " Why, Mr. Slocum, you will not turn your bill in that way, will you ?" He·said, " Yes, I will." She then said to him that he knew her circumstances, and that Zottman never provided for her.' His reply was, " I know that."

At this period of the conversation, Rufus B. Anderson, the defendant, who had been sitting on a trunk, got up and said, " Mother, let me speak to him ;" at the same time stepping up to where his mother was standing, in front of Slocum, who still continued sitting on the bed. Anderson then said to Slocum, " Do you intend to turn your bill in that way ?" Slocum replied again, " Yes, I do." Anderson said, " If you will do that, after being treated as you have been treated by my mother, you are no gentleman." Mrs. Zottman interposed with, " Rufus, don't talk that way., Let me attend to this." Anderson then stepped back, and Mrs. Zottman began to speak to Slocum of her situation, and that Zottman had not helped to support her, and appealed to Slocum not to turn his bill in that way. On his again replying that he would, Anderson again stepped forward, and said, " Mr. Slocum, you are not a gentleman, and have not the principles of a gentleman about you, if you would treat my mother in that way." At this Slocum rose from his seat on the bed, and said, " Don't talk to me in that way, Rufe ;" and according to Anderson's own account, shook his finger in his face, and said, " Well, by G–d." The two had then moved or were moving towards the door, Slocum with his back towards it, and Anderson said, " Keep your hands off me," repeating it sev-

eral times.   Mr. Eggleston then stepped between them, saying, "I will have no fuss here ;" and as he did so, Anderson stepped back, drew a pistol, and fired two shots at Slocum, in quick succession, at the second of which Slocum sank down upon his face on a mattress, and in a few minutes expired.   Just before or at the time the shots were fired, Mrs. Zottman exclaimed, " Oh, my God, you will kill me !"

Immediately after the discharges of the pistol, the Egglestons seized Anderson, and took the pistol, a revolver, from him.   As they moved together towards the door, Anderson kicked the expiring man, and said, " G–d d—n him."

The whole occurrence, from the commencement of the conversation between Mrs. Zottman and Slocum until the shots were fired, appear to have taken up less than five minutes.

The facts and proceedings particularly involved in the decision are stated in the opinion.

*Hupp and Anderson* and *Pitzer and Will Campbell*, for Appellant.

The indictment in this case is insufficient to bring it, as to matters of substance, within the requirements of the common law, or of the liberal statutes of 1867.   Under its averments, the State had no right to prove on the trial the fact that Slocum was then dead, or when or where he died.

The plain rule is this : An indictment must contain an averment of every *material* fact which constitutes the offense charged therein ; and on the trial every such fact must be proven as alleged. The *allegata* and *probata* must correspond substantially.   This indictment does not allege that Slocum is dead, or when or where he died, if at all.   Failing in these material particulars, how could proof be admitted to prove death, and the time and place thereof, and how upon the indictment, without such alleged evidence, could the Court pronounce a judgment in the premises, according " to the right of the case," as contemplated by the latter clause of Section 243 of the Criminal Practice Act ?   It may be contended, as against the position here laid down, that the indictment alleges that the defendant *killed* Slocum, on or about the 5th day of May,

1868, in Lander County, Nevada, and that that allegation sufficiently covers those we contend the indictment should contain, namely, as to the fact, time, and place of demise.

The same rules as to the *essentials* of an indictment, apply to every case. A man may shoot, cut, beat or poison another insomuch that he would die therefrom in eight or ten months; a grand jury might indict him in less time, and say truly that he, defendant, shot or otherwise wounded, or poisoned, and thus killed the other party, at a truly given time, prior to the finding of the indictment; and yet the jury could not, upon their oaths, find and allege that he was dead, or that he died at a given time and place; nor could the fact be proven on trial whether alleged or not.

The requisites of an indictment are not all pointed out in Sections 235 and 236, as amended in 1867, of the Criminal Practice Act. We must look, in part for them, to Section 243 of the same Act. This indictment is defective, fatally so, under Section 236, as amended in 1867.

The following authorities show that death, and the time and place thereof, must be alleged, and where caused by a " single incision wound," that, too, must be alleged and described. The term, " single incision wound," cannot in reason be confined in law to a *cut,* but may, and ought to, include a wound by gun or pistol ball. (6 Cal. 207, 236; 9 Cal. 31, 54, 583; 17 Cal. 142, 166; 27 Cal. 507; 2 Pick. 143; 13 Pick. 363; 16 Pick. 213; 17 Pick. 399, 432; 19 Pick. 307; 4 Gray, 32; 13 Metcalf, 368; 2 Cush. 556; 5 Cush. 295; 11 Cush. 422; 4 Blackstone, 306, N. S.; 3 Barb. 15; 8 Barb. 547; 9 Barb. 671; 34 Maine, 223.)

Appellant's counsel cited on the point as to right to peremptory challenge: *State* v. *Squires,* 2 Nev.; *People* v. *Jenks,* 24 Cal. On the point as to state of mind of defendant previous to homicide: *People* v. *Cassello,* 15 Cal.; *People* v. *Belencia,* 21 Cal. On the point as to facts in the charge to the jury: *State* v. *Waterman,* 1 Nev.; *State* v. *Millain,* 3 Nev.; *People* v. *Sanchez,* 24 Cal.; *Cahoon* v. *Marshall,* 25 Cal.; *People* v. *Barry,* 31 Cal.; *People* v. *Dick,* 32 Cal.; 1 Parker's Criminal Reports, 340; 4 Id. 587 and 588; *People* v. *Maxwell,* 24 Cal.; *Miller* v. *People,* 5 Barb. 204; 10 Barb. 321; 12 Barb. 84; 29 Barb. 226;

30 Barb. 421.    On the point as to interference with the jury : *Reynolds* v. *Champlain Transportation Co.*, 9 How. ; 5 Hill, 560 ; *People* v. *Douglass*, 4 Cow. 26 ; *Wilson* v. *Abrahams*, 1 Hill, 207 ; 1 Cow. 221, 589 ; 3 Cow. 355 ; Brad. & Bingham, 257 ; 5 Mass. 405 ; 17 Mass. 218 ; *Eastwood* v. *People*, 3 Park. Cr. Law, decision of Judge Selden, full and complete.

*Robert M. Clarke*, Attorney General, for Respondent.

## I.

The indictment is in the exact form prescribed by the statute. If the Legislature had the constitutional power to prescribe the form, then the indictment must be held good, because it is expressly declared to be sufficient.    That the Legislature had such power, is affirmed in the *State* v. *Millain*, 3 Nev. 438.    It is, therefore, no longer an open question.

## II.

The Court did not err in denying defendant's offer to challenge peremptorily, without cause shown, one of the eleven persons whom he had passed and accepted, and who had been sworn to try the cause.    After a juror is sworn to try the cause, no challenge will lie, except for *good cause* shown. (Statutes of 1861, 469, Sec. 334 ; 23 Penn. 17 ; 16 Cal. 131.)

## III.

The offer by defendant to prove wrong done his mother at a time anterior to the killing, by persons other than the deceased, with which he had no connection, and which formed no part of the *res gestæ*, was properly denied by the Court.    The testimony was wholly irrelevant.

## IV.

The State offering no testimony to show the purpose with which the defendant procured the pistol used in the killing, and distinctly admitting that it was not procured to be used in killing Slocum, the Court did not err in denying the defendant's offer to show why he purchased the pistol.    The testimony was wholly immaterial.

## V.

Instruction number one asked by defendants is radically defective in this : it contains a false and imperfect definition of the crime of murder, and is calculated to mislead the jury. Murder in the first degree may be committed without deliberation or premeditation, by killing in the perpetration or attempt to perpetrate arson, robbery, burglary, etc. ; and deliberation and premeditation are not at all necessary ingredients of murder in the second degree. Besides, the point was covered by the charge previously given ; and more than this, it contains the false doctrine that a reasonable doubt is sufficient to establish " circumstances of mitigation," and reduce the crime from murder to manslaughter. (*State* v. *Waterman,* 1 Nev. 554 ; *Commonwealth* v. *York,* 9 Met. 93 ; 5 Cal. 129 ; 15 Cal. 482 ; 32 Cal. 281 ; *State* v. *Knight,* 43 Me. 11–137 ; 3 Nev. 439.)

## VI.

Instruction number two is erroneous in assuming that any assault will reduce the homicide from murder to manslaughter. (2 Bishop's Criminal Law, 388, sec. 728 ; 4 Barr. 264 ; 1 Cart. 556 ; 1 Wharton, A. C. L., sec. 971 ; 5 Car. & P. 324 ; 1 Wharton, 566, sec. 1127.) The instruction is further erroneous in making the mitigating circumstances depend wholly upon the existence of passion at the time of the killing, without taking into consideration this further question, " Had the passion time to cool ?" (Bishop's Crim. Law, 391, sec. 733.)

## VII.

Instruction number three confounds murder in the first and second degrees, and requires a " willful, deliberate, premeditated and malicious intention to take human life" to exist in either case. Deliberation and premeditation are in no sense necessary to warrant a conviction for murder in the second degree. (Statutes of 1861, 58, sec. 17.)

## VIII.

The Court in instructing the jury that " merely shaking a finger in the face of another, or touching his face with the finger, or lay-

ing a hand on his collar or breast, cannot be deemed an attempt to commit a serious personal injury on the person touched  *   * or a sufficient provocation to excite an irresistible passion in the mind of a reasonable person." It is absurd to say that such things constitute a serious and highly provoking injury  *   *   * sufficient to excite an irresistible passion in a reasonable person. Nor is the instruction in any sense open to the objection that it instructs the jury as to the facts. It nowhere assumes a fact to have been proven or disproven, but is a correct statement of the law arising from the facts hypothetically stated. Nor is the case altered because the facts stated constitute the exact and entire defense relied upon by the defendant. Who but the Judge presiding was competent to give legal interpretation to Section 19 of the Crimes Act, of which the instruction was an interpretation? Who but the Judge presiding was competent to pronounce upon the legal effect of any fact proved or the legal sufficiency of any defense established? Suppose a Court instruct a jury in a murder case that "from an intentional killing with a deadly weapon malice is presumed"; would this be an assumption of the fact of killing and of the use of a deadly weapon, or would it in any sense take from the jury their just prerogative of determining the fact? "When the evidence does not tend in any legal view to make out the case, it is the duty and province of the Court to so instruct the jury." (Hilliard on New Trials, 226, Sec. 41.) It is the duty of the Court to pronounce on the effect of evidence. (31 Penn. 489.)

## IX.

There was no *separation* of the jury and no *misconduct.* Misconduct is never presumed, but must be affirmatively shown. It involves culpability or turpitude on the juror and injustice or wrong done the defendant. No Court has ever granted a new trial, in the absence of separation, on the suspicion of misconduct merely. But furthermore, if it were possible that misconduct could be presumed, that presumption is entirely negatived by the record. (Hilliard on New Trials, 165, Sec. 8.)

*Henry Mayenbaum,* District Attorney of Lander County, also for Respondent.

By the Court, BEATTY, C. J.

The defendant was convicted of murder in the first degree, moved the Court below for a new trial, which was refused, and now appeals to this Court from the order refusing a new trial.

The first point made is, that the indictment is insufficient to support the judgment of the Court below. In the case of *The State* v. *John Millain,* (3 Nev. 409) we held that an indictment which complied with our statutory requirements was sufficient, and that it was not necessary that it should contain all the old common law averments. The body of this indictment is as follows:

" Defendant, Rufus B. Anderson, above named, is accused by the Grand Jury of the County of Lander, State of Nevada, by this indictment of the crime of murder. Committed as follows:

" The said Rufus B. Anderson, on the fifth day of May, A.D. 1868, or thereabouts, at the City of Austin, County of Lander, State of Nevada, without authority of law, and with malice aforethought, killed Noble T. Slocum, by shooting him with a pistol, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Nevada."

This is in strict compliance with the form prescribed in the statute and is similar to the Millain indictment, except in this—that it fails to state that " by means of the shooting with the pistol aforesaid, the said Noble T. Slocum *then and there* died." The prisoner's counsel contend that this, or some equivalent averment, was absolutely necessary to make the indictment good. Counsel contend that the averment that the prisoner killed Slocum by shooting him with a pistol on a certain day cannot be held to mean that he fired the fatal shot, and that the prisoner also died on that day. If it only means that accused fired the fatal shot on the day alleged, then there is no allegation that the party shot was dead when the indictment was found, for a party may live for a long period after receiving a mortal wound. On the other hand, if it only means that Slocum died on the day alleged, then there is no averment that the wound was inflicted within a year and a day. We are inclined to think that the allegation that defendant, " On the fifth day of May, 1868,  *  *  *  killed Noble T. Slocum by

shooting him with a pistol," means not only that Slocum died on that day, but that the fatal shot was also fired on the same day. But admitting it does not clearly show both events accrued on the same day; still it does aver, we think, most distinctly that Slocum died on that day.   There can be no killing before death.   A mortal wound may be given on one day, and death ensue on another. But we never say a man is killed until he is dead, unless we use the word "killed" in a figurative sense.   If we mean to convey the idea that a party has received a wound of which he will die, we do not say he is killed, but that he is mortally wounded.   If the allegation only means that Slocum died on the 5th day of May from the effect of a pistol shot, previously fired, we see no reason why this should make the indictment defective.   If the shot was fired more than a year and a day before the death, then the law would presume that the party died from some other cause than the wound.   No proof of a shooting which took place more than a year and a day before the death of the party would be received, and of course the prisoner could not be in any danger from this source. The indictment follows the form of the statute, is as formal and precise as the form of indictment now in use in England, and quite as full as the form recommended by the Code Commissioners of New York, (See 3 Nev., pages 464 and 466) and is in our opinion sufficient.

The next error complained of is the action of the Court below in regard to peremptory challenges.   The facts in relation to this point are as follows : After twelve jurors had been examined and passed by both sides, all challenges for cause interposed up to that time having been disposed of, the Court required the respective parties to make their peremptory challenges to the jurors then in the box.   The District Attorney interposed no challenge.   The prisoner challenged four of the twelve jurors.   The Court then directed the eight jurors in the box to be sworn to try the cause, and also ordered that in filling the panel each juror thereafter called shall be finally passed on by the exercise or waiver of the peremptory right of challenge.   After eleven jurors had been sworn to try the cause, and defendant had exhausted nine of his peremptory challenges, he asked leave to challenge one of the eleven jurors

then sworn to try the cause. This privilege was refused. The prisoner then exhausted his tenth challenge on another juror who was called, and the jury was completed.

Whilst perhaps in cases of felony it might be the best practice to have the panel full before any of the jurors are sworn to try the cause, yet we see no violation of law in pursuing a different course.

Our Criminal Practice Act clearly contemplates the swearing of jurors before the panel is completed. The California Criminal Practice Act is similar in language, and the Courts of that State have held that jurors may be sworn to try the cause as they are passed on without waiting for the full panel to be made up. *People* v. *Reynolds,* (16 Cal. 128.) The Court there held that the allowance of a peremptory challenge after a juror has been accepted and sworn, is not a matter of right. It may be permitted, says the statute, for good cause. (Section 334, Criminal Practice Act.) In this case no attempt to show cause was made why the peremptory challenge should be allowed. The case of the *People* v. *Jenks,* (24 Cal. 11) is not in conflict with this rule. There, there was an offer made to challenge one of the jurors *before* he was sworn to try the cause.

The third point made for the prisoner is, that the Court excluded certain evidence offered by the defendant. This evidence was intended to prove that defendant had been in difficulties, and was in a state of mental excitement just prior to the killing, arising from difficulties or quarrels with other persons than the deceased. It was also offered to prove that he procured and carried the pistol with which the shooting was done on account of those other difficulties. Slocum, the party slain, as was admitted by the prisoner's counsel, had no connection with these other difficulties. It was also admitted by the District Attorney that the defendant did not procure or carry the pistol with any design of using it against Slocum. We think this testimony was properly refused. It had no connection with the case. If the defendant had quarreled with anybody else, we cannot see how that could mitigate his offense in killing Slocum.

The defendant asked for three instructions, which were refused by the Court, and each of the three is claimed as being correct.

The first was as follows: "If the jury entertain a reasonable doubt whether the killing was willful, deliberate, and premeditated, they should find him guilty of such crime as to which they, the jury, believe him guilty beyond a reasonable doubt."

It is a well-settled rule in cases of homicide, that after the killing has been satisfactorily established, the burden of proof to reduce the crime from murder to manslaughter is thrown on the defendant. This instruction is not very intelligible, but so far as we can understand it, it seems to be in conflict with this principle. The Court on this point gave very clear and explicit instruction—fully as favorable to prisoner as he was entitled to. It was not, then, error to refuse an ambiguous instruction, calculated to mislead, when the Court had already given one on the same point which was clear and explicit.

The second instruction asked was this: "If the jury believe from the evidence that immediately before the firing of the pistol by the defendant, the deceased had assaulted the defendant, or had given to him a serious and highly provoking injury, sufficient to excite an irresistible passion in a reasonable person, and that such provocation did excite in the defendant a sudden, violent impulse and irresistible passion, and that acting under such passion he, the defendant, fired upon and killed the deceased, the jury should find the defendant guilty of manslaughter." This instruction uses the disjunctive *or*, and would require the jury to find the defendant guilty of manslaughter only if they found that he had been assaulted just before the shooting. This is not law. It is not every assault which will reduce a homicide from murder to manslaughter. (See 2 Bishop on Criminal Law, Secs. 544–560, and cases cited.) The proof in this case showed that if there was any assault at all it was of the slightest kind, the mere touch of a finger or the laying of a hand on the coat of the defendant. It further showed if there was any such assault, it was brought about by the misconduct of the defendant himself.

The third instruction refused was in the following language: "That in order to constitute the crime of murder, there must be a willful, deliberate, premeditated, and malicious intention to take human life, and if the jury should believe that the killing of Slo-

cum by the defendant was not willful, deliberate, premeditated, and malicious, that they cannot find him guilty of murder in the first degree."

The opening clause of this instruction gives a false definition of murder. This was a sufficient reason for refusing to give it. The conclusion of the instruction was right, but the Court should not have given it in the form presented.

Undoubtedly when counsel offer instructions in favor of a prisoner which are in the main correct, but contain some error or fatal defect in some part of the language used, it would in many cases be but just and humane in the Court to point out the defect and allow counsel to correct their instructions; but whereas in this case counsel seek to get instructions on points where the Court has already instructed the jury, the Court is perfectly right in rejecting every instruction which is not technically correct. In this case the Court instructed the jury on all the points intended to be embraced by the three rejected instructions, and framed its instructions much more accurately than those prepared by counsel.

The next error assigned is, that the Court below erred in giving its instructions to the jury; the part of the instruction complained of is the following language : " That it is not every assault that is deemed sufficient in law to mitigate a killing by the person assaulted, to the grade of manslaughter. Merely shaking a finger in the face of another, or touching his face with his finger, or laying a hand on his collar or breast, cannot be deemed an attempt to commit a serious personal injury on the person touched. Neither is a refusal to pay a debt, whether justly due or not, to be deemed such a serious and highly provoking injury as to be sufficient to excite an irresistible passion in the mind of a reasonable person.

" If the jury believe that the only assault made on the defendant was of the character above stated, and that the only other injury inflicted upon him consisted in the refusal to pay the money claimed by his mother, and in the use of such words as : You must not speak to me in that way ; I won't allow you to speak to me in that way, or words of similar import ; even with the addition of the words: Well, by God ; it would be going a great ways to say that such assault and provocation are sufficient to excite an

irresistible passion in a reasonable person." The principal argument urged against this part of the instruction is, that the Court in giving it violated that part of the Constitution which declares that " Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law." The prohibition against charging juries in respect to matters of fact was only intended to prevent Judges from saying in regard to any fact in regard to which there was any evidence introduced that it was or was not established. Whilst the Court is the sole judge as to the admissibility of evidence, after it has been admitted, as to any point in a case, the jury are the sole judges as to its credibility, weight, and sufficiency. Whilst the jury must determine whether a disputed fact, (about which some evidence has been introduced) has been established, the Court may properly tell the jury what will be the legal effect of the establishment of such fact. In this case the Court did not pretend to tell the jury whether an assault had been made on the defendant, but merely told them if such assault had been made, as was described by the defendant in his own testimony, what would be the legal effect of such assault. The law, as applied to the supposed state of facts, was certainly correct.

The next point made by appellant is in regard to the misconduct of the jury. It appears that during the progress of the trial and whilst the Court had taken a recess, the jury were in the Court House in charge of a Deputy Sheriff. There was an open window to the Court-room, and a number of persons were standing about this window on the outside. The jury and Deputy Sheriff were at the same window inside. One of the jurors nearest the window saw a newspaper in the hands of a spectator and asked him for it. The party addressed handed up the paper to the juror, saying no more than " certainly," " you are welcome," or some short answer of this kind, having no reference to anything other than the loan of the paper. The juror glanced over the Eastern dispatches, and just at this time the Judge came in and he handed the paper back to the party from whom he borrowed it. This is complained of as misconduct of the jury entitling the defendant to a new trial. Nothing which took place on this occasion could by possibility have influenced the mind of the juror in finding his verdict. The proof

The State of Nevada *v.* Wright.

is satisfactory that no other conversation did occur than as related above. Whilst it was imprudent in the juror even to have held· such conversation, it certainly shows no improper motive on his part, no willful or premeditated disobedience of the instructions of the Court, no intent to do wrong, and no possible injury to defendant. It is not such misconduct as to entitle defendant to a new trial.

The last point made by defendant is that a juror served on the panel who, before the trial, had expressed an unqualified opinion as to the guilt of the prisoner. The ·facts appear to be that the juror stated on his examination touching his qualifications as a juror that he had formed and expressed an unqualified opinion as to the guilt or innocence of the prisoner, but subsequently had modified that opinion. With this state of facts presented to the prisoner's counsel, they failed to challenge the juror for either implied or actual bias, but accepted him without objection. If the prisoner accepts a juror without objection, whom he knows to have formed and expressed an unqualified opinion, he cannot, after verdict, raise this objection. If he willfully takes his· chance with such a juror, he must abide the result. Otherwise a prisoner could always get a new trial by simply refusing to exercise his unquestioned right to challenge such jurors for implied bias.

The judgment of the Court below is affirmed, and that Court will fix a day for carrying its sentence into execution.

BY LEWIS, J., dissenting.

In my judgment the indictment is fatally defective, hence I dissent.