[No. 3,113.]

## THE PEOPLE *v.* JOHN· J. MURPHY.

DAY FOR CARRYING INTO EFFECT SENTENCE OF DEATH.—The day for carrying into effect a sentence of death should not be designated in the judgment, but in the warrant for the execution.   ·

CHALLENGE FOR IMPLIED BIAS.—The mere formation of hypothetical opinions as to the guilt or innocence of the prisoner, founded on hearsay or information, and unaccompanied with malice or ill-will, is not sufficient to support a challenge for implied bias.

ALLOWING CHALLENGE FOR IMPLIED BIAS.—The action of the trial Court in allowing a challenge to a juror for implied bias is not open to review.

EVIDENCE ON TRIAL FOR MURDER.—Evidence of the acts and exclamations of the wife of the prisoner, made and performed at the time of the killing, and in his presence or hearing, is admissible on behalf of the prosecution.

TESTIMONY OF DECEASED WITNESS.—The prosecution, on a second trial for a crime, may prove what a witness, since deceased, testified to on a former trial.

GENERAL RULES OF EVIDENCE.—The general rules of evidence are the same in both criminal and civil cases.

HOW TESTIMONY OF DECEASED WITNESS PROVED.—The testimony of a witness, since deceased, given on a former trial in a criminal case, may be proved on a subsequent trial, by permitting a person who kept notes of such testimony, and who swears they contain the substance of the testimony, to read his notes to the jury.

DECLARATIONS AS EVIDENCE.—Declarations of a deceased, made three or four days before he was killed, which do not have any appreciable bearing on the merits of the case, are not admissible in evidence on a charge of murder, on behalf of the defense, on the trial of the person by whom he was killed.

APPEAL from the District Court, Fifth Judicial District, County of San Joaquin.

The juror Smith, when called, in answer to questions, said he had formed some opinion merely from what he had heard, but never expressed any; but, that he thought it would not do to rely altogether on what he had heard, and he did not place implicit belief on it; that his opinion was a conditional one, as he doubted whether what he heard was true; and

that he should be governed entirely by the testimony and not by what he had heard; and that he had not formed an unqualified opinion.

The juror Kingsley, when called, in answer to questions, said he had heard of the case, and at the time, formed an opinion in respect to the guilt or innocence of the defendant, but could not say now what that opinion was, and whatever the opinion was it had not been changed since; and the opinion was formed through the published statements of the case, and that it was such an opinion as would require evidence to change, and that he believed the statements he read, but did not know they were true; that whatever the opinion was it would be changed by evidence, and that it was formed so long ago that he did not remember which way it was formed; and that the opinion was formed from what he read, but was not an unqualified one, and that now he had no opinion on the subject.

On the trial Daniel Murray was called as a witness for the people, and said he and deceased and Mrs. Murphy, defendant's wife, were in the house together, and a conversation occurred between Mrs. Murphy and deceased, in which the deceased spoke of taking his wife, who was sick, to San Francisco, and Mrs. Murphy desired her to be taken to Stockton, and the deceased got angry and said they had stolen everything they had from him. Mrs. Murphy asked, who had stolen? deceased said, you know, and that he had been to the States to bring his family out to keep them from stealing everything; that at that time defendant opened the outside door, having a gun. Defendant objected to this conversation, because he was not present, but the Court overruled the objection. The witness said he then ran into a bedroom where Mrs. Murphy was, and she shut the bedroom door and held it, and he heard the deceased say, "Blow, blow," and then heard a cap snap, and that Mrs. Murphy exclaimed, "Oh! you have missed him," and that in a sec-

ond the other barrel was fired, and Mrs. Murphy got away from the door, and they went out and deceased was lying on the floor. Defendant's objections to what Mrs. Murphy said and did were overruled.

The defense called one Wallace as a witness. It appeared that the deceased was killed at his own house. The defense proposed to prove by Wallace that three or four days before the killing deceased told him he would not permit his daughter to take care of her sick mother. The defense claimed that this testimony was relevant in order to show that Mrs. Murphy was at the house of deceased to take care of his wife, her sister-in-law, in order to rebut any presumption of a conspiracy on the part of defendant and his wife in relation to the killing. The Court refused to admit the testimony. The defendant appealed.

The other facts are stated in the opinion.

*W. L. Dudley* and *J. H. Budd*, for Appellant.

The Court erred in permitting E. S. Pillsbury to testify to what Mrs. Murray said on the former trial.

First—Such testimony is inadmissible in criminal cases. (*Finn* v. *Commonwealth*, 2 Rand. 701; *Brogg* v. *Commonwealth*, 10 Gratt. 322; *The People* v. *Newman*, 5 Hill. 295; *State* v. *Atkins*, 1 Tenn., Overton, 229.) The Criminal Practice Act of May 1st, 1851, specifies the particular cases in which the testimony of a dead or absent witness can be used as evidence against a defendant in a criminal case. (See Division III of section eleven, and Chapter II of Title XII, of said Criminal Practice Act.) The testimony of such deceased or absent witness must have been taken by question and answer, to be admissible in any event. The statute which provides how such testimony is to be taken, in what cases, in order to be admissible as evidence, excludes such testimony, when not taken in the manner and in the particular cases specified in the statute.

The law maxim of *" expressio unius est exclusio alterius "* applies in the construction of this statute.

Second—The person called to prove what a deceased witness testified to on a former trial must be able to give, if not the precise words, yet at least the substance of the language used by the deceased witness, it not being sufficient to give the substance of the testimony. The language of the deceased witness is the vehicle by which the testimony of such witness is transmitted to the jury. ( *Warren & al.* v. *Nichols,* 6 Met. 262; *Wilber* v. *Selden,* 6 Cow. 165; *Ephraims* v. *Murdock,* 7 Black. 10.)

Third—The notes of the witness Pillsbury were not in any event competent evidence of what the deceased witness swore to, unless the witness Pillsbury were able to state, from recollection alone, the substance of what the deceased witness stated. (*Sloan* v. *Somers,* 1 Spencer, 66.)

Fourth—There are cases in which the Judges have held that in criminal actions the testimony of a deceased witness might be proven; but the Court held in those cases that the person by whom such testimony is to be proven must be able to give the precise words of the deceased witness. ( *United States* v. *Woods,* 3 Wash. C. C. 440; *Commonwealth* v. *Richards,* 18 Pick. 437; 4 Tenn. Rep. 290.) The offered testimony was rejected in all these cases, but on the ground that the precise words of the deceased witness must be sworn to.

*John L. Love, Attorney General,* for the People.

The testimony of E. S. Pillsbury was admissible. Section eleven of the Criminal Practice Act (Hittell, 1599,) does not apply: First—The witness, Mrs. Murray, was not examined before a committing magistrate. Second—It was not a case where Mrs. Murray, a witness for the people, was unable to give security for her appearance.

She was a witness in the case on a former trial and upon

a subsequent trial.   What she testified to, she being dead, was admissible under the common law in the manner and form as introduced.   (1 Greenleaf on Evidence, Secs. 163, 164, 165, 166; 1 Phillips on Evidence, Cowen, H. & E. Notes, Sec. 9, p. 389.)   As to swearing from notes.   (Id. 400; 1 Greenleaf, Sec. 166.)   Generally.   (*Ballinger* v. *Barnes*, 3 Dev., N. C. Reps. 467; *Chess.* v. *Chess.*, 17 Serg. & R. 409; *Van Buren* v. *Cockburn*, 14 Barb. 118; Am. Crim. Law, 667, E.)

By the Court:

The prisoner was convicted of the crime of murder in the first degree and sentenced to be executed on Friday, the 3d of November, 1871.   No point is made, or could be successfully made here, against the judgment, in that it undertakes in itself to fix a day to carry the sentence of death into execution; but we had occasion to say in *People* v. *Bonilla*, 38 Cal. 99, that "the practice of designating in a judgment of death a day for carrying it into effect is not in keeping with the provisions of the Criminal Practice Act.   The day should be designated in the warrant, and not in the judgment."  More or less inconvenience and sometimes delay in the proper administration of criminal justice ensues from a nonobservance by trial Courts of the statute in this respect, and we, therefore, think it proper to again call attention to the practice which ought to be pursued in such cases.

1. The first error relied upon is the disallowance of the challenges interposed by the prisoner to the jurors Hitchcock, Smith, and Kingsley.   These persons were respectively challenged for implied bias as having formed an unqualified opinion in relation to the guilt or innocence of the prisoner, and the challenges were overruled.

The challenges were not put upon the ground that either of the jurors had *expressed* an unqualified opinion as to the

guilt or innocence of the prisoner so as to bring the case within the ruling made here in the case of *People* v. *Cottle*, 6 Cal. 227, and followed in the case of *People* v. *Brotherton*, 43 Cal. 530. The opinions, if any, appearing to have been entertained by the jurors, were certainly not more than mere hypothetical opinions, founded on hearsay or information, and unaccompanied with malice or ill will, and under the Act of March 30th, 1868 (Acts 1867–8, p. 704), the mere formation of such opinions would not support a challenge for implied bias. Besides this, the juror Hitchcock seems never to have formed an opinion at any time, and the jurors Smith and Kingsley, if they ever had any opinions upon the question, were unable to call to mind what those opinions were, and at the trial had none at all. We are not prepared to say that a juror is to be held disqualified from the mere fact that he had at one time formed an opinion which he had never expressed, and even the purport of which he is unable at the trial to recall to memory.

2. The next point relied upon by the prisoner is that Martin, a person competent to sit as a juror upon the trial of the case, being called upon the venire, was challenged by the people for implied bias, the challenge erroneously sustained by the Court, and Martin thereupon excluded from serving as a juror, to all which the prisoner then and there excepted. But the action of the Court below in this respect was not the subject of an exception, and is not open to review in this Court.

By the Criminal Practice Act (Sec. 433) it is provided that an exception may be taken to the decision of the Court upon a matter of law *in disallowing a challenge to a juror for implied bias.* The action of the Court in *allowing* such a challenge is not included, but is omitted, and *ex industria* omitted; in other words, *excluded* by the statute itself as forming the subject of an exception. This distinction was pointed out here by the Attorney General, in *People* v.

*Stewart*, 7 Cal. 140, but was then apparently overlooked by the Court—at least it was not adverted to in the opinion delivered in that case.   The reason, and it is a sensible one, upon which the statute proceeds, is that when a competent jury, composed of the requisite number of persons, has been impaneled and sworn in the case, the purpose of the law in that respect has been accomplished; that, though in the impaneling of the jury one competent person be rejected, yet if another competent person has been substituted in his stead, no injury has been done to the prisoner, certainly no injury which a new trial would repair, because even should a venire *de novo* be awarded, it is not pretended that the prisoner could insist upon the excluded person being specially returned upon the panel.   The result would be that the prisoner would probably be tried again by another competent jury, of which the excluded person would not be a member, and so the new trial would only be to do over again that which had been done already.

3. The evidence given by the witness Daniel Murray, in respect to the exclamation and acts of the wife of the prisoner, was properly admitted.   These occurred at the time of the homicide and in the presence or hearing of the prisoner, and the circumstances in evidence strongly tended to show complicity between the prisoner and his wife in the killing of Murray.

4. On the former trial of the case Mrs. Murray, wife of the deceased and a sister of the defendant, who at the time of the homicide was in the room adjoining to that in which the killing was done, and heard and saw something of it, was sworn for the prosecution and was examined and cross-examined as a witness.   Since then and before the second trial she had deceased, and the prosecution at the last trial were permitted, against the objection of the prisoner, to prove what she had sworn to as a witness.   That in civil cases the testimony of a deceased witness given upon a

former trial of a case, where an opportunity to cross-examine the witness had been afforded, may be proven upon a subsequent trial of the same case upon the same issue and between the same parties, is well settled. Nor is there any distinction to be taken between civil and criminal cases in the application of the rule itself.

The general rules of evidence when observed, and the relaxations of those rules when permitted, are ordinarily the same, whether the particular case be civil or criminal in its character. No well considered adjudication has been called to our attention in which the distinction asserted by counsel in this respect has been maintained, nor are we able to perceive such a distinction in principle.

Further objection, however, is made to the means by which the evidence of the deceased witness was shown. The precise language used by the deceased was not shown— her testimony, *ipsissimis verbis* was not proven, but in some respects only in substance. Nor was its substance shown by a witness able through the mere effort of his own memory to recall it to his recollection so as to detail it to the jury. Mr. Pillsbury was called as a witness to prove what the deceased witness had stated upon her examination and cross-examination at the former trial. He was the District Attorney who upon the part of the people conducted that trial, and had in his possession the minutes of her testimony as he wrote them down while the witness was testifying at that trial, and which he produced. Mr. Pillsbury testified that he thought that the minutes contained the substance of the testimony of Mrs. Murray as she gave it, both upon her direct and cross-examination; that the testimony of the witness was by her given slowly, and he thought he had taken it down in full; that he knew of nothing that had been omitted; that he had endeavored to write it down as given by the witness as nearly as possible—though he might have " varied in little particulars "—but that to the best of his

recollection the minutes taken by him contained the substance of the testimony, the substance of all that the witness testified to on that examination, both direct and cross-examination. The Court thereupon, against the objection of the prisoner, permitted Mr. Pillsbury to read to the jury the minutes of the testimony of Mrs. Murray as taken down by himself, and which appeared to be in the narrative form, commencing thus: " I am the wife of Patrick Murray, deceased," etc., and purporting upon its face in the main to be the language used by the witness.

We see no error in this. Though the witness were unable from memory, even after consulting his minutes, to state the testimony as given, there is nothing in this circumstance to exclude the minutes themselves, to the substantial correctness of which he had testified, from being read in evidence. Such was the view taken by Tilghman, C. J., in *Metis* v. *O'Hara*, 4 Binn. 110, and subsequently approved by Gibson, J., with the concurrence of the whole Court, in *Cornell* v. *Green*, 10 S. & R., 17. In the latter case Fisher, the witness who testified to the evidence given by the deceased witness, produced the notes of the evidence of the deceased witness, as he had taken them down, and testified from his recollection as refreshed by referring to the notes themselves, but the notes were not read to the jury. This was of course held competent—but in referring to the method of proof pursued in that case, Gibson, J., uses this language: " It seems, however, singular, that instead of trusting Mr. Fisher's recollection the plaintiff did not offer his *notes* in evidence, against which, when properly authenticated, there could be no sort of objection."

That the earlier cases, or many of them, held to the doctrine that the precise words of the witness must be proven, is true, but the rule in that respect has been greatly relaxed

in modern times, and now the substance of the evidence given is sufficient. (1 Greenleaf, Sec. 165, and cases cited in note.) Indeed, to hold that the witness testifying to the evidence given by the deceased witness must from *mere memory* state the *precise words* of the deceased witness, would practically exclude the evidence altogether, for it would be difficult to find a person claiming to possess a memory of such remarkable power, and perhaps still more difficult to find a jury who would give much credit to the claim.

5. The evidence of the witness Wallace as to statements made to him by the deceased three or four days before the homicide about his daughter taking care of her mother was properly excluded. It would have had, if admitted, no appreciable bearing upon the merits of the case, and would not have tended to throw any light on the alleged complicity between the prisoner and his wife in the killing of Murray.

6. The fifth instruction criticised by the prisoner's counsel is a substantial copy of section twenty-nine of the Act concerning crimes and punishments, and there was no error in giving it to the jury.

Judgment affirmed, and the Court below directed to fix a day to carry the sentence into execution.