[No. 1009.]

THE STATE OF NEVADA, RESPONDENT, v. JOHN T. PRITCHARD, APPELLANT.

JUROR—INCOMPETENCY OF—CONSCIENTIOUS SCRUPLES.—A juror who states that in a case where the punishment is death he would not find the defendant guilty upon circumstantial evidence, is an incompetent juror.

IDEM—ALLOWANCE OF CHALLENGE NOT SUBJECT TO REVIEW.—The allowing of challenges by the court for implied bias is not subject to review. (State v. Larkin, 11 Nev. 314, affirmed.)

INSTRUCTIONS MUST BE CONSTRUED AS A WHOLE.—In determining whether

an instruction is erronous, the whole charge relating to the same subject must be taken together and considered as an entirety.

EVIDENCE—MURDER IN THE FIRST DEGREE.—*Held*, that the evidence in this case is sufficient to support a verdict of murder in the first degree.

CHALLENGE TO JURORS—WHEN MUST BE TAKEN.—The bill of exceptions shows that C. O. Appleburg and eleven other jurors were examined and passed by both parties, for cause, and were in the box, when inquiry was made of cousel for appellant whether he had any peremptory challenges; that appellant then refused to exercise his right, and thereafter passed his challenge several times, and did so after notice from the court that, in so passing his challenge, he would be considered as having accepted all the jurors then in the box. The state interposed several challenges, and as often as a juror was challenged another name was drawn, thus keeping the panel full. When the state ceased challenging, no challenge had been taken by appellant, and he then challenged Appleburg: *Held*, that the court erred in disallowing this challenge. (Hawley, J., dissenting.)

IDEM—WAIVER.—*Held*, that the facts stated in the bill of exceptions did not constitute a waiver on the part of the defendant to interpose a challenge to the juror Appleburg at any time before the jury was sworn. (Hawley, J., dissenting.)

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The defendant was indicted, tried, and convicted, of the crime of murder in the first degree for the killing of Humphrey Symons, a policeman, in Gold Hill.

The evidence on the part of the state showed that the defendant and a woman, with whom he was living, and called his wife, resided on the divide between Gold Hill and Virginia City, in a portion of the house owned by Mrs. Casey. On the twenty-first day of July, 1879, the day of the homicide, the defendant and his wife were quarreling, and during the quarrel a pistol shot was fired. Mrs. Casey became alarmed, went out of her portion of the house, crossed the street, and called on Humphrey Symons and begged him to stop the quarrel. Symons, at Mrs. Casey's request, went into the room occupied by Pritchard and his wife. As he entered the door he had his cane in his right hand and pipe in his left. In less than half a minute after he entered the room two pistol shots were fired in quick succession, and soon thereafter a third shot was heard. About five or ten min-

utes after the third shot was fired the defendant came out on the porch with a revolver in his right hand, and kept talking to a number of persons in the street. One witness heard him say "that he would shoot the last one; that if anybody * * * come in there to see Symons he would shoot the last one that came in." Another witness testified that when defendant came out on the porch he said, "he had shot him and he would do more." Another witness testified that defendant said: "I have killed one; I've got more for the rest of you." Upon a *post-mortem* examination of the body of the deceased three pistol-shot wounds were found in his head: one entered the right cheek under the right eye and passed downwards and inwards and through the upper jaw; another ball entered the left cheek a little under and to the outside of the left eye and passed backwards, coursing along the base of the skull until it reached the back side of the left ear; the third ball entered about two and a half inches behind the right ear, passed downward and forward between the two layers of skull, forcing a large fragment of skull into the brain. The two latter wounds were mortal. There were powder marks on the face of the deceased, which indicated that the pistol when fired must have been in close proximity to the face.

When parties went into the house Symons was still alive, but unable to talk. The only words he spoke, were: "Shoot him, shoot him." His body was examined for weapons, and a pistol was found in his hip pocket. Every chamber was loaded. It was an English Bull Dog pistol, five shooter (very similar to the one found on defendant). The whole center of the floor where the body lay was covered with blood, and marks of his hands, and the prints of his fingers, where he tried to get up. There was blood all over the place.

Shortly after the shooting, Mr. Folsom, marshal of Gold Hill, entered the room for the purpose of arresting the defendant, and told him that he was the marshal; at the same moment the defendant raised up from a lounge, and drew a pistol from his right hip pocket. The marshal shot at him but did not know whether he hit him or not, and as his

pistol refused to go off a second time he retreated, arrested Mrs. Pritchard, and upon his return he met defendant in charge of Mr. Donovan. Defendant was arrested by Mr. Donovan, constable of Gold Hill, who found a pistol upon him with four empty chambers, and one charged. The defendant was shot in his right arm. About one hour after the arrest of defendant, and while he was in charge of the officers, he said that "he would shoot anybody that came into his house to arrest him;" that "he shot Symons, and would shoot any one that came into his house;" that if the marshal had not shot him in the arm he "would have killed three or four more of the s—s of b——s." The next day after the shooting, Dr. Kirby, the county physician, said to defendant: "Look here, Pritchard, it is rumored abroad that you didn't do the shooting." And he said: "I shot the s—n of a b——h, and don't deny it; if I hadn't been shot myself, three or four others would have got it." When in the county jail of Ormsby county, some ten or twelve days after the trial, the defendant, in explaining how the difficulty occurred, stated to Mr. Powers, deputy sheriff, that the officer was called in by the lady who owned the house which he rented, that the officer came into the house and said: "Good morning, Mr. Pritchard, you may consider yourself under arrest." That he said: "What for?" That the officer said: "Disturbing the peace." He said: "Have you got a warrant?" The officer said: "You will get one when you get to Gold Hill." He then said: "I want a warrant before I go." That the officer came in with his left hand on the lapel of his coat and his cane hanging on his arm, and his gun in his right hand; that he (Pritchard) refused to go, and the officer shot him in the arm. The testimony on the part of the state as to the character of the firearms, all tended to show that the defendant was shot by Mr. Folsom.

*R. H. Taylor*, for Appellant:

I. The court erred in allowing the challenge on the part of the state, to the juror Evan David, for implied bias. (1 Comp. L. 503; Crim. Pr. Act, secs. 340, 342.)

II. The court erred in disallowing the peremptory challenge on the part of the defendant, to the juror C. O. Appleburg. It was the only peremptory challenge taken by defendant. He was entitled to ten peremptory challenges. (Crim. Pr. Act, sec. 336.) He was entitled to challenge Appleburg peremptorily at any time after his appearance in the jury box, and before he was sworn to try the cause. (Crim. Pr. Act, secs. 334, 354.)

III. The court erred in giving to the jury the instruction asked for by the state. It is opposed to the letter and the reasonable construction of the statute. (Act concerning Crimes and Punishments, 1 Comp. L. 560, sec. 17; Id. p. 561, secs. 19, 20; *Robbins* v. *The State,* 8 Ohio St. 131; *People* v. *Potter,* 5 Mich. 5; *People* v. *Scott,* 6 Id. 293; *Milton* v. *The State,* 6 Neb. 138.)

IV. The testimony does not show *prima facie* that defendant is guilty of murder in the first degree. (*State* v. *Turner,* Wright (Ohio), 28.)

*M. A. Murphy,* Attorney-General, for Respondent:

I. There was no error committed by the court in sustaining the challenge to the juror Evan David. (Comp. L., sec. 1964.)

II. The action of the lower court in allowing a challenge to a juror for implied bias is not subject to review by this court. (Comp. L., sec. 2046; *People* v. *Murphy,* 45 Cal. 137; *People* v. *Colson,* 49 Id. 679; *State* v. *Larkin,* 11 Nev. 325.)

III. The court may of its own motion, for any good reason, excuse a qualified juror from sitting on the panel in a criminal case. (2 Gra. & Wat. on New Trials, 192; *State* v. *Kelly,* 1 Nev. 224; *State* v. *Lawry,* 4 Id. 166; *People* v. *Arceo,* 32 Cal. 44; *Stewart* v. *The State,* 1 Ohio St. 66; *United States* v. *Cornell,* 2 Mason, 91; *State* v. *Larkin,* 11 Nev. 326; *Waller* v. *State,* 40 Ala. 325.)

IV. The court properly overruled defendant's peremptory challenge to the juror Appleburg. They were notified by the court that if they had any challenges to make they must make them, and defendant declined to exercise his

right when so requested. (*State* v. *Potter*, 18 Conn. 166; *State* v. *Roderigas*, 7 Nev. 328; *State* v. *Cameron*, 2 Chand. Wis. 178; *Com* v. *Rodgers*, 7 Met. Mass. 500.)

V. There was no error in the giving of the instruction asked for by the prosecution. It states the law correctly. (*The State* v. *Harris*, 12 Nev. 414; *People* v. *Nichol*, 34 Cal. 214; *People* v. *Williams*, 43 Id. 344.)

By the Court, LEONARD, J.:

Appellant was convicted of murder of the first degree.

1. The evidence in the case was to a great extent circumstantial. A juror, Evan David, stated that in a case where the punishment was death, he would not find the defendant guilty upon circumstantial evidence. Whereupon the court sustained a challenge for implied bias, and the juror was excluded. He was plainly incompetent under the ninth subdivision of section 340, of the Criminal Practice Act. The state was entitled to a jury of impartial men, who would render their verdict according to the evidence, whether circumstantial or direct and positive. Besides, the action of the court in *allowing* challenges for implied bias, is not made the subject of an exception. (*State* v. *Larkin*, 11 Nev. 325; *People* v. *Murphy*, 45 Cal. 137; *People* v. *Colson*, 49 Id. 679; *People* v. *Atherton*, 51 Id. 495.)

2. The court instructed the jury, that "there need be no appreciable space of time between the intention and the act of killing. They may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer; and if such is the case, the killing is murder in the first degree, no matter how rapidly these acts of the mind may succeed each other, or how quickly they may be followed by the act of killing."

That was only a part of the instructions given. In addition, the court properly defined murder of the first and second degrees, and manslaughter, as well as justifiable and excusable homicide. The instruction complained of, if given alone, could not be upheld, but, in connection with the others, it is correct, as was held in *State* v. *Harris*, 12

Nev. 416. (See, also, *People* v. *Nichol*, 34 Cal. 214; *People* v. *Williams*, 43 Id. 344.)

3. After careful examination we are convinced that the evidence is sufficient to support a verdict of murder in the first degree.

4. The bill of exceptions shows, that C. O. Appleburg and eleven other jurors were examined and passed by both parties, for cause, and were in the box, when inquiry was made of counsel for appellant, whether he had any peremptory challenges; that appellant then refused to exercise his right, and thereafter passed his challenge several times, and did so after notice from the court, that, in so passing his challenge, he would be considered as having accepted all the jurors then in the box. The state interposed several challenges, and as often as a juror was challenged, another name was drawn, thus keeping the panel full. When the state ceased challenging, no challenge had been taken by appellant, and he then challenged Appleburg. His challenge was disallowed, an exception taken, and the jury was then sworn to try the cause. The number of challenges taken by the state does not appear.

It is strenuously urged by counsel for appellant, that until his challenges were exhausted, his right was to challenge, peremptorily, any juror who had not been sworn to try the cause. We do not understand counsel for the state to deny, that appellant would have had the right to interpose a challenge to Appleburg, or any other juror, before he was sworn, if the court had not notified him, that "if he passed his challenge, he would be considered as having accepted all the jurors then in the box."

It has always been the policy of the law to permit the defendant in a capital case, the longest time possible, in which to exercise his peremptory challenge; that is, until the juror is sworn. The statute makes no provision as to the time when such challenge shall be interposed, only that it shall be taken before the juror is sworn; and the court may, for good cause, permit it, as well as a challenge for cause, to be taken after he is sworn. (Crim. Pr. Act, secs. 332, 334.) We have no doubt, as was said in Anderson's case

(4 Nev. 275), that the Criminal Practice Act contemplates the swearing of jurors before the panel is completed.   It is fairest, however, to postpone the administration of the oath as late as possible, which certainly may be done, if no objection is made.   But if the court delays swearing the jury until after it is completed, it is just and reasonable for the defendant to alternate with the state in taking his challenges; and the statute does not prohibit such practice. Compliance with a rule requiring him to do so, may be enforced, as we shall see, but if we are not mistaken, that can be accomplished in one way only; that is, by swearing such jurors as are not challenged by the state, and which the defendant then refuses to challenge.   But this subject will be considered hereafter.   We only wish to say at this time, that appellant would, without doubt, have had the right to challenge Appleburg when he did, if he had not been notified as above stated.   (*People* v. *Reynolds*, 16 Cal. 132; *People* v. *Kohle*, 4 Id. 199; *People* v. *Rodriguez*, 10 Id. 59; *People* v. *Jenks*, 24 Id. 12; *People* v. *Johnson*, 47 Id. 122; *Hendrick's Case*, 5 Leigh, 715; *Hunter* v. *Parsons*, 22 Mich. 101; *Johns* v. *People*, 25 Id. 503; *Hooker* v. *State*, 4 Ohio, 350; *Mulny* v. *State*, 7 Blackf. 593; *Morris* v. *State*, 7 Id. 607; *Williams* v. *State*, 3 Kelly (Ga.), 459; opinion of chief justice in *State* v. *Cameron*, 2 Chandler (Wis.), 181; *State* v. *Squaires*, 2 Nev. 232.)   It remains to consider whether the court's notice cut off the right appellant would otherwise have had.

In the *State* v. *Anderson*, 4 Nev. 274, the court required both parties to make their peremptory challenges to the twelve jurors then in the box, all of whom had been examined and passed for cause.   The district attorney interposed no challenge, and the defendant but four.   The eight remaining jurors were then sworn to try the cause, and the court ordered that thereafter, in filling the panel, each juror called should be finally passed on by the exercise or waiver of the peremptory challenge.   After eleven jurors had been sworn to try the cause, and the defendant had exhausted nine of his peremptory challenges, he asked leave to challenge one of the eleven jurors *then sworn*.   That privilege was refused, and this court sustained the refusal

upon the ground, that under our statute, the court had the right to have jurors sworn before the panel was completed, and that *after they were sworn*, a peremptory challenge to *such*, was not a matter of right. The court said the case of *The People* v. *Jenks*, 24 Cal. 11, was not in conflict with the rule stated, and added: "There there was an offer made to challenge one of the jurors *before* he was sworn to try the cause;" thus intimating, at least, that if the juror in Anderson's case, had not been sworn at the time he was challenged, a disallowance of the challenge would have been error; for, as we shall see, it was so held in Jenks' case. We are not disposed to extend the rule stated and upheld in Anderson's case.

Jurors may be sworn before the jury is completed, if such a course is deemed necessary by the court, and after that, such jurors can not be challenged unless good cause is shown. But we shall see that a court can not by any rule or order deprive a prisoner of the right to challenge a juror peremptorily before he is sworn; and that being so, we fail to perceive how it can do so, indirectly, by notifying him that a failure to challenge at a time stated, but before the juror is sworn, will be considered an acceptance. Many of the cases hereafter referred to, hold that appellant had the right to *retract* his acceptance or election of Appleburg, even though his silence was tantamount to either; but that point we do not decide, our opinion being that it amounted to neither. The law provides that, before a juror is called, the defendant shall be informed that, if he intends to challenge an individual juror, he must do so when the juror appears and before he is sworn. (Sec. 332.) The plain meaning of that language is, that he may have until the juror is sworn to challenge peremptorily; because sections 352 and 353 provide that, all challenges for *cause* shall be taken immediately after the juror is called, first by the defendant, then by the state, and that all *such* challenges shall be exhausted by each party before the other begins. It follows, of course, that if either party fails to exercise any challenge *for cause*, at the time stated, he waives his right; because his time to do so is expressly limited. But it is not

so in relation to the peremptory challenge, for as to that, section 354 provides: "If all the challenges on both sides be disallowed (that is, all challenges for cause), either party may still take a peremptory challenge, unless the peremptory challenges be exhausted;" and there is no limit set, within which the challenges last named shall be taken, except that they shall be interposed before the jury is sworn. And if, for any reason, the court delays the swearing of the jury until it is fully impaneled, the time for challenging peremptorily is thereby extended, and its only limitation still is, until the jury is sworn. Had the court, in Anderson's case, ordered that in filling the panel, each juror thereafter called should be finally passed upon by the exercise or waiver of peremptory challenges, but had not caused them to be sworn after defendant's failure to challenge as ordered, a subsequent disallowance of challenges to such as were not sworn, would have been error. In other words, the order made would have been ineffectual, if, before the challenge, it had not been supplemented with an oath to the juror to try the cause. And if the court has not power by an order alone, to abridge the time given by statute, how can it do so by a notice to the defendant, that his failure to challenge before the expiration of the statutory limit will be considered an acceptance of jurors not challenged?

Our opinion is, that if, *as a question of law,* appellant's failure to challenge Appleburg at the time stated was not an acceptance of him, or a waiver of the right to challenge at any time before he was sworn, then the court was not justified in so considering it, or in notifying appellant that it would be so considered, or in being misled, if appellant did not so consider it. The court had a right to come to a legal conclusion upon the effect of appellant's conduct, and that effect followed with or without notice. But notice of a conclusion not sustained by the law, fell still-born. It did not affect appellant's rights, and it was not incumbent upon him to express any dissent therefrom, take exception thereto, or in any way yield his rights by reason thereof. There was nothing to except to. (Crim. Pr. Act, sec. 421). At most, it was *merely information* given in advance, that the court

would construe defendant's failure to challenge at the time stated, as an acceptance, although the law's limit to the exercise of the privilege was different and more favorable to him.

Within the lawful period he could claim his privilege, the same as though the useless notice had not been given; and when the challenge was disallowed, an exception at that time is all that was necessary. A defendant may, oftentimes, waive a privilege by failing to exercise it within the time allowed by law; but he waives nothing, by inaction merely, so long as that time remains; because neither the court nor the state ought to conclude therefrom, that he intends to waive his right, and consequently neither should be misled or deceived thereby. If our statute provided that, in case a defendant desires instructions to the jury, he shall present them to the court at any time *before the close of the argument on both sides,* it would hardly be claimed, upon a plea of waiver or otherwise, that he would be barred from so doing, although no exception was taken, simply because of a notification by the court, that unless he hands them in *before* the argument, he will be considered as not desiring instructions. The court would have no right to so inform him, or to so consider the effect of a failure to present them at the time stated; and a refusal to give proper instructions presented at any time before the close of the argument, would be error.

Suppose a defendant in a civil case, where he has ten days to answer, under the statute, immediately upon being served with summons, gives the plaintiff written notice of his appearance, under section 499 of the Civil Practice Act. The court is in session, and the notice is served in court.

Plaintiff's attorney asks the court to order the defendant to answer in *five* days. Defendant waives notice of the motion, and thereupon the court not only informs him that, if he fails to answer within five days, it will be considered that he does not wish to answer, and that judgment by default will be taken against him, but also orders him to answer within five days. Neither the defendant nor his attorney pays any attention to the information volunteered by

the court, or to the order.   Default is entered at the end of five days, and judgment taken.   On the tenth day an answer is filed, when defendant moves the court to set aside the default and vacate the judgment, without making any showing, except the facts above stated, and that he has a good defense at law to the action.   The court refuses the motion, on the ground that the defendant waived his right to answer by failing to do so in *five* days, and orders the answer struck from the files of the court.   The defendant excepts, and the court signs and seals a bill of exceptions showing all the facts stated.   The action of the court in that case would be so plainly error, that no attorney having regard for his reputation, could be induced to make an argument in its support. But why was not the refusal complained of here, equally erroneous, it being true that the time for challenging Appleburg, as fixed by statute, had not expired when the challenge was interposed?

In the case supposed, no exception to the court's information or to its order would have been necessary, for in the face of the statute the court had no right or power to give the one or make the other, and they went for naught.   So it was in this case.   If the statute allowed the court, *in its discretion*, to permit a defendant in a criminal case to pass his peremptory challenge or not, and by an order alone to abridge the time for challenging, then silence by him when notified, as appellant was in this case, might, with more reason, be deemed a waiver or acceptance, and the court, with greater reason, to have so considered it.   But as the statute now is, an expression of dissent by appellant's counsel would have been purely gratuitous on his part.   He was not bound to speak or lose a plainly declared right. It is true, upon the authority of Anderson's case, that the court could have had such jurors sworn before the panel was completed as were not challenged by either party; and it may be said if appellant had not by his silence apparently acquiesced in the court's construction of the effect of his failure to challenge, that the jurors passed by both parties *might have been sworn*, and thus the privilege of challenging Appleburg cut off.   It is begging the question to say

that, inasmuch as the court *might have cut off* a valuable privilege, in a legal way, therefore it could do the same thing by a method that is not allowed. We do not know, however, nor have we any reason to think, that the court would not have postponed swearing the jury until it was completed, even though appellant's counsel had stated that he did not agree with the court in its conclusions, and should claim the right to challenge any juror until he was sworn. There was no intimation of an intention to pursue a different course if appellant did not challenge at the time stated; and appellant's counsel might well have concluded that, the court only intended to notify him of what it considered the *legal* effect of passing his challenges. Before it can be claimed that appellant ought to be deprived of a statutory right of the highest importance, because he misled the court, two facts at least should plainly appear: First, that he had some reason to think his conduct was misleading; and, second, that the court was, in fact, misled, and thereby induced to pursue a course in impaneling the jury which otherwise, it would not have pursued. Because, *prima facie,* the disallowance of a peremptory challenge by the defendant in a criminal case, before such challenges are exhausted, and before the juror is sworn, is error; and if there is nothing in the record justifying the court's action it must be so declared. It ought, also, to appear that appellant's conduct would have been detrimental to the interests of the state, if his challenge had not been disallowed. But for the purposes of this case, let that fact be presumed, if the other two above stated are shown. In the first place, by his silence, appellant can not be said to have acquiesced in anything not contained in the court's notice, which was, that in passing his challenge he would be considered as having accepted the jurors then in the box, among whom was Appleburg.

If we are correct in the conclusions before stated, the court had no right to be misled in that regard; that is, with or without appellant's silence, it should not have considered that, passing the challenge was an acceptance or waiver, which barred an exercise of the right at any time before the

juror was sworn, or that appellant ought to so consider it. Nor had appellant reason to think the court would change the method of impaneling before pursued, if he did not then interpose his challenges or accept the jurors then in the box; for, as before stated, there was no intimation of such intention, and apparently there was no cause for it, because it appears that there were eleven jurors who had been summoned in the case, who had not been called or examined at the time the panel was completed. Under such circumstances, it should not be held that appellant ought to have thought the court *would* pursue a different method, simply because it *might* do so. Had he avowed his intention to challenge any juror he saw fit, until such juror was sworn, still, the court might not have changed its method, and if it had not, appellant could have challenged Appleburg.

In the second place, if the court was, in fact, misled, it was in misapprehending the legal effect of passing the challenge, merely, after notice; and, as before stated, there is nothing in the record tending to show that a different course would or ought to have been pursued in impaneling the jury, had appellant announced his intention to claim his right, as to any juror, until he was sworn. Finally, when he passed his challenge after notice, it may be that he did not intend to object to any juror then in the box. It may be, that his mind was changed by something that occurred after the court's notice and immediately before Appleburg was challenged. If so, he was in no manner blamable, and silence, after an ineffectual notice, should not, and can not, be considered as a waiver of the right of challenge or an acceptance of jurors then in the box. (*Lindsley* v. *The People*, 6 Parker's Cr. R. 237.)

In support of the action of the court below, we are referred to four authorities, and after a somewhat extended research, are unable to add to the list.

The first, and most important, is *The State* v. *Potter*, 18 Conn. 175. The statute then in force in that State gave a defendant indicted for murder the right to challenge, peremptorily, " twenty of the jurors *summoned and impaneled*

for said trial, and no more, without showing sufficient reasons." (*State* v. *Potter, supra;* Gen. Stats. Conn. Revis., 1866, p. 288, sec. 238.)

We quote from the opinion:

"Again, it is said the prisoner has been deprived of a right to a peremptory challenge, which he was entitled to. It is not denied that time and opportunity were given to the prisoner to challenge a juror, but it is claimed that he had not all the time the law allows him. Dickerman, a talesman, had been examined, and there was no cause of challenge known against him. The court then told the counsel, if they intended a peremptory challenge they must make it at that time. They had, then, a reasonable opportunity to make their challenge; but they claim they may make it at their own time, provided it is done before the jurors are sworn. The statute, it is said, gives them power to challenge peremptorily twenty jurors summoned and impaneled, and much criticism has been had upon the word 'impaneled.' It is claimed that it means the jury sworn to try the cause, and that, until sworn, they are not impaneled. That they form a jury, when thus impaneled, is true, but that they are not impaneled until sworn is not true. On the other hand, we learn from high authority that a jury are said to be impaneled when the sheriff has entered their names into a panel, a little piece of parchment. (Co. Litt. 158, b.) * * * And we can hardly open a book upon the subject but it speaks of the panel returned by the sheriff. (4 M. & Sel. 467.)"

It is not necessary for us to give our opinion of the meaning of the word "impaneled," as used in the statute referred to. It is enough to know the meaning given to it in Potter's case, as it was indefinitely used in that particular statute; which was, that a jury might be said to be impaneled when their names were entered by the sheriff in his return of jurors summoned. In other words, that the statute itself did not prescribe the time when a peremptory challenge might or should be taken. After arriving at that conclusion, it was very properly held that, the statute did not, in terms, or by rational implication, prohibit the court from fixing

the time when the defendant should interpose his challenges, especially as in so doing he was given all rights accorded by the common law practice. We quote further: "But it is said the clerk informs the prisoner that if he would challenge them, or any of them, before they are sworn, he shall be heard. This is certainly the form. We understand it to mean that his challenges must be made before the jurors are sworn; but we do not suppose that the prisoner is, therefore, to direct at what time before they are sworn this shall be done. He is called upon then to make his challenges, and when he has had a fair opportunity to do this, he has had the privileges the statute confers upon him. He has the right to plead, to examine witnesses, to be heard by counsel; but the court direct the time when he shall plead, when his witnesses shall be heard, and the order in which his counsel shall speak. * * * The order of time and manner of proceeding on all such subjects must, of course, be under the direction of the court, *unless the statute prescribes otherwise.*" We might fully agree with the above, in view of the Connecticut statute and the court's construction of the same. Because it does not appear from the opinion, or from an examination of the statute, that under the law of that state, it was the court's duty to have the clerk inform the prisoner, "that if he would challenge the jurors, or any of them before they were sworn, he should be heard." If that was so, and informing the prisoner as stated, was merely a matter of practice, there was nothing in the statute to hinder the court directing also, at what time before the jury were sworn, the challenge should be taken.

Potter's case was decided upon the Connecticut statute, as this case must be upon ours. The natural meaning of ours has already been given, and courts should not, by judicial legislation, give it any other.

The *State* v. *Roderigas*, 7 Nev. 328, is not in conflict with our opinion as before expressed. The intention of the court was to affirm the decision in Anderson's case, and nothing more. In both cases, the juror had been sworn *before* the challenge was taken.

In the *State* v. *Cameron*, 2 Chand. (Wis.) 178, it appears that before the jury had been sworn, but after they had been accepted by both parties, the defendant, whose challenges had not been exhausted, asked leave to challenge a juror peremptorily, but his request was refused. A majority of the court thought the ruling was correct and said: "The cases cited by the counsel for the prosecution show, that in two of the states, the practice is not to allow a defendant in a criminal prosecution to challenge a juror peremptorily after he had been accepted; while in Massachusetts it appears that the privilege must be exercised before the juror is examined. (*Commonwealth* v. *Rogers*, 7 Met. 500.) An examination of the authorities shows, that the practice is different in different states, and has not been uniform in the same courts."

The opinion was rendered in 1850, and no reference is made to the statute.    *    *    *    The Revised Statutes of 1858 (p. 993, sec. 4) show that certain peremptory challenges are allowed, but there is no direction or intimation as to when they shall or may be taken. We presume such was the case at the time of the decision in question. If so, it does not necessarily militate against our view.

The chief justice, however, dissented from the opinion of the majority, and held that the right of peremptory challenge existed until the actual swearing of the juror. (p. 181.)

*Commonwealth* v. *Rogers* is the last case cited by the counsel for the state. The court held, that under the Revised Statutes "the right of peremptory challenge, if exercised at all, must be exercised in the first instance, before the juror should be interrogated as to his bias or opinions." Sec. 3 of ch. 137 (see Mass. Rev. Stats. 1836) provided that, "Every person indicted for any offense shall, when the jury is impaneled for his trial, be entitled to the same challenges that are by law allowed to defendants in civil cases. And sec. 27, ch. 95, regulating trials in civil actions, provided: "The court shall, on motion of either party in any suit, examine on oath any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion.    *.    *    *    ;

and if it shall appear to the court that the juror does not stand indifferent in the cause, another shall be called and placed in his stead *for the trial of that cause.*" Under those statutes the court held as before stated; evidently upon the ground that if an indifferent juror was placed upon the jury, "for the trial of that cause," it was not intended that he should be challenged off.

We conceive that upon the state's own authorities, its position is poorly sustained; but, as briefly as possible, let us examine those taking an opposite view. In *People* v. *Kohle*, 4 Cal. 199, after twelve jurors had been called *and accepted*, the prisoner, having ten peremptory challenges, offered to challenge one; but his offer was refused and the jurors were sworn. It was held that the court erred. The statute referred to in the opinion, as well as in all other cases in that court, to which we shall refer, was the same as ours. Kohle's case was decided in 1854—seven years before our Criminal Practice Act was copied from the California statute. In *People* v. *Rodriguez*, 10 Cal. 59, decided in 1858, the court said: "Had the eleven jurors been sworn against the objection of defendant, and then his challenge refused, the question would have presented another aspect. The right to challenge the juror *before* he is sworn is expressly secured by the statute and settled by the decision of this court in the case of the *People* v. *Kohle.*"

In *People* v. *Reynolds*, it was held that, "jurors may be sworn as they are accepted, or the administration of the oath may be delayed until the panel is completed." (But see *People* v. *Scoggins*, 37 Cal. 676, and *People* v. *Russell*, 46 Id. 122.) "Either mode may be adopted, and in either case the defendant must exercise his right of peremptory challenge before the jury is sworn."

In *Jenks'* case, 24 Id. 12, after five jurors had been impaneled, the court informed the defendant "that he must exhaust all his challenges to the jury before accepting them, and that he would not be permitted to challenge afterward, without assigning a sufficient reason therefor." Defendant excepted to the rule. He afterward examined the remaining seven for cause, and passed them to the district attorney,

who expressed himself satisfied with the jury. The court then ordered them to be sworn, when defendant challenged one of the seven last examined, without assigning any reason therefor, except his "statutory right." His challenge was disallowed and the jurors were sworn to try the cause. The supreme court held the disallowance of the challenge "clearly erroneous," saying, that "the plain and express provision of the statute can not be contravened by any arbitrary rule of the court.    *    *    *    Facts touching the competency of the juror might come to the knowledge of the defendant or his counsel *after their acceptance* and before the administration of the oath, not known to them at the time he was accepted, which might materially affect their judgment upon the question of challenge. In such an event the defendant is not bound to disclose these facts to the court or jury."

In *People* v. *Ah You*, 47 Cal. 121, twelve jurors were sworn to answer questions. After they had answered, several peremptory challenges were interposed, *and the remainder were accepted.* Others were then called to fill the panel, and after they had been examined for cause, the defendant peremptorily challenged Davis, *who had been accepted* when the first list of jurors was called. The challenge was disallowed, the court holding that it could not be interposed without cause shown. The supreme court held that, the defendant could take his challenge at any time before the juror was sworn. *Hendrick's case*, 5 Leigh, 710, shows that, D. Hudson was called as a juror and *elected* by the prisoner. The court refused thereafter, but before he was sworn, to permit the defendant to challenge him peremptorily. On appeal the court said: "But we think the court below erred in refusing to permit the prisoner *to retract his election* of the juror D. Hudson, and to challenge him peremptorily. Some circumstances are stated to show the reason of this decision, which it is not necessary to advert to; for this court is unanimously of opinion that the right of a prisoner to challenge any juror peremptorily *is absolute* at any time before the juror is sworn, and that *no circumstances can bring that right within the discretion of the court,* so long

as it is confined to the number of peremptory challenges allowed by law." And for that error the judgment was reversed. (See, also, other cases first cited in this opinion.)

We are of opinion, upon reason and authority, that the court erred in disallowing the challenge in question, and that thereby appellant was deprived of a material right.

The judgment and order overruling appellant's motion for a new trial are reversed, and the cause remanded.

HAWLEY, J., dissenting:

I am of opinion that the record affirmatively shows that the defendant waived his right to interpose a peremptory challenge to the juror Appleburg.

The rule is universal that a party, either in a civil or criminal action, may waive any statutory right, unless the observance of it is imperatively required.

As a general rule counsel can not consent by their presence and by their silence to any action of the court, and afterwards avail themselves of an objection thereto, which could, and should, have been made at the time.

These principles are elementary and, if applicable, conclude the defendant from complaining of the action of the court in this case.

Are they applicable? I am of opinion that they are. Why not?

It must be admitted that the court had the right, under the authority of *The State* v. *Anderson*, 4 Nev. 265, to have sworn the juror, in the first instance, when counsel refused to interpose any peremptory challenge, and if it had done so the defendant would thereby have been deprived of the opportunity to interpose a peremptory challenge at any time thereafter, except within the discretion of the court. Now, this being true, what magic can be found in the language of the statute that wipes out the refusal of counsel to assert their rights when clearly and distinctly informed by the court that if they are not asserted they will be considered as waived?

Under the provisions of the statute a defendant in a criminal action is entitled to a certain number of peremptory

challenges.   This right can not be abridged by any rule of court.   It is, however, always optional with the defendant to avail himself of this right or not.  It is a personal privilege given to him by favor of the legislature, and may be waived or asserted by him according to his judgment, caprice or pleasure.  (*State* v. *McClear*, 11 Nev. 53.)   The defendant has not put himself in a position to complain of the action of the court.   He was not denied the right to exercise his statutory privilege.   The opportunity was given him to interpose his peremptory challenge at the proper time, and he refused to avail himself of it or to take any exception whatever to the action of the court.

The supreme court of this state, in *The State* v. *Roderigas*, held that the district court did not err "in compelling the defendant to accept or challenge peremptorily each juror, as it was found there was no ground to challenge him for cause."   The court said: "This exact point was decided against the defendant in the case of *The State* v. *Anderson*, 4 Nev. 265, and we are not now disposed to question the correctness of the views there expressed."   (7 Nev. 335).

If these decisions are correct, and they are so considered by a majority of the members of this court, it necessarily follows, in my opinion, that either the state or the defendant may, upon the trial, demand that the jurors be sworn whenever it appears that there is no ground of challenge for cause, and the respective parties refuse to interpose a peremptory challenge; and that the prevailing practice in this state of not swearing the jury until the panel is complete, is clearly erroneous, and can not, in any case, be sustained, unless it affirmatively appears that both parties expressly waived their statutory right, or by their presence and by their silence consented to such a mode of impaneling the jury.

It can not, in my opinion, consistently be claimed that the statute authorizes two or more separate and distinct modes of impaneling a jury, although there are expressions used in *The State* v. *Anderson*, which would seem to imply that the courts were authorized to pursue a different practice from the one stated.

The error, therefore, which the court committed in the present case was in not impaneling the jury in the mode adopted in *The State* v. *Anderson.* But how can defendant, upon the state of facts set out in the record, complain that this error was or could possibly be prejudicial to him? He did not ask that the jurors should be so sworn. He did not object to the mode adopted by the court. Did he not, by his silence, waive his statutory right to have the jury sworn at any particular time?

The statute of this state does not provide that the respective parties shall alternate in taking their peremptory challenges; yet it is the common and proper practice so to do. Suppose that counsel for the defendant should be capricious and refuse to consent to this method of challenging, could not the court, following the rule established in *The State* v. *Anderson,* enforce this practice by swearing the jurors whenever the defendant refuses to exercise his right of challenge? It certainly could.

Was the practice adopted by the court in this case more prejudicial against the defendant? Certainly not. But even if it was, does it not necessarily follow, under the well-established principles of law, that the defendant could not avail himself of the error without showing that he objected at the time? Can he by his silence consent to such a practice, and afterwards complain? Can he waive his challenge and afterwards demand, as an absolute right, that it should be restored to him? Is it not thereafter exclusively within the discretion of the court to allow him this privilege or not?

If a party waives his right to interpose a peremptory challenge, he must abide by his waiver. He should not afterwards be permitted to resume his challenge. If he keeps his objections back, at a time when he ought to make them known, for an improper reason, or from motives of mere caprice, the discretionary power of the courts to declare his right of challenge waived ought not to be denied. (*Patton* v. *Ash,* 7 Serg. & R. 123; *McFadden* v. *The Commonwealth,* 23 Pa. St. 17; *Commonwealth* v. *Dougherty,* 8 Phil. 440.)

The law is well settled that if a prisoner or his counsel know of any cause of challenge against a juror, and fail to

take it when the juror is examined upon his *voire dire*, he can not avail himself of the defect afterwards. (*State* v. *Anderson*, 4 Nev. 265; *State* v. *Rigg*, 10 Id. 284; *State* v. *Borowsky*, 11 Id. 127; *People* v. *Stonecifer*, 6 Cal. 405; *State* v. *Fisher*, 2 Nott & McC. 264; *Brown* v. *State*, 52 Ala. 345; *Keener* v. *State*, 18 Ga. 215; *Croy* v. *State*, 32 Ind. 384; *Gardiner* v. *The People*, 6 Parker Cr. R. 195.)

Under the provisions of the statute an alien is exempt from jury duty. If objection is made upon that ground the alien is excluded; but if no objection is made, the acceptance of the juror, as in the cases above cited, is deemed a waiver of the statutory right of exclusion. (*Hollingsworth* v. *Duane*, 4 Dal. 330; Wallace, Ct. Ct. 147; *State* v. *Quarrel*, 2 Bay. (S. C.) 150; *State* v. *Vogel*, 22 Wis. 471; *Turner* v. *Hahn*, 1 Col. 28.)

The same rule applies where the juror is incompetent by reason of his age. (*Williams* v. *The State*, 37 Miss. 407.)

These authorities (and numerous others might be cited) all show that the general practice of the court requires every litigant in criminal as well as civil causes to take advantage of his rights at the proper time, and if he fails to do so, his neglect will be considered as a waiver.

If the rule, as declared in *The State* v. *Roderigas*, is correct, then, it seems to me, the defendant in this case certainly waived his right to interpose a peremptory challenge to the juror Appleburg at the proper time for its exercise; and in my opinion it was thereafter within the discretion of the court to refuse or allow him to exercise such challenge.

This discretion may be reviewed by this court. I am, however, unwilling to say that the court abused its discretion in this case, although, in my judgment, the better practice would be, especially in capital cases, to exercise this discretion in defendant's favor unless it clearly appears that his request is unreasonable or merely capricious.

The other points presented in the record have all been settled adversely to appellant by previous decisions of this court.

In my opinion the judgment of the district court ought to be affirmed.

BEATTY, C. J., concurring:

I concur in the conclusion of Justice Leonard, that the district court erred in denying the challenge to the juror Appleburg.

The cases cited by Justice Hawley undoubtedly prove all that he claims for them, viz.: "That the general practice of the courts requires every litigant, in criminal as well as civil causes, to take advantage of his rights at the proper time, and if he fails to do so his neglect will be considered as a waiver."

This proposition, however, is far from being conclusive of the case. If it had been, no argument or citation of authorities was needed to establish it; for it has been the postulate of every argument addressed to the court by counsel for the respective parties, and I understand Justice Leonard to concede throughout his opinion, as unreservedly as I concede myself, that the failure of a party to assert his privilege at the *proper time* is a waiver.

The argument, therefore, which results in a conclusion that has been treated as self-evident from the beginning to the end of the case appears to me to have been wasted.

No one has denied that a defendant in a criminal action can, and does, waive a peremptory challenge by failing to interpose it at the proper time, but there is a serious question as to what is the proper time. The appellant claims that the law gave him the absolute right to challenge peremptorily at any time before the juror was sworn, while counsel for the state contend that the right to make such challenges can be lost at any time by acceptance of the juror, either express or implied, and can not thereafter be reclaimed, no matter how long the court may delay swearing him. It is here that the whole controversy hinges, and it is merely clouding and obscuring the question before the court to pile up authorities to prove what has never been doubted, *i. e.*, that objections to jurors for alienage, nonage, etc., are waived if not taken in time. The point, and the only point to be determined in this case, is the time allowed by our law to the defendant in a criminal action for

making his election whether or not to challenge a juror per-
emptorily.   Justice Leonard holds, and in that view I con-
cur, that his right of election remains absolute and uncon-
trolled up to the time the juror is sworn.   Justice Hawley
holds that it may be waived within that time by an implied
acceptance of the juror.   This is the specific point at issue,
and it is important to know what the courts have held with
respect to it.   Justice Leonard has cited four cases that are
directly in point. (5 Leigh, 710; 47 Cal. 121; 6 Park. Crim.
R. 233; 24 Cal. 12.)   In the first three it was held that the
right of peremptory challenge was not waived by an express
acceptance of the juror afterwards challenged, and in the
last that such right could not be abridged by any order of
the court.   No decision of a court has been found which
holds that the right is or can be waived by the defendant
within the time allowed to him by law for making his elec-
tion.   There are cases in which it has been held that the
law of particular states (Connecticut, Massachusetts, Mis-
souri, and Wisconsin) limits the right of the defendant to
take peremptory challenges to some earlier stage of the pro-
ceedings than the swearing of the jury; but I repeat, there
is no case in which it has been held that such opportunity
as the law gives can be abridged by order of the court, or
by the failure of the defendant to exercise his right sooner
than the law obliges him to do so.

Upon this point the language of the court in *Lindsley* v.
*The People* (6 Parker Cr. R. 237–8) is peculiarly apposite:
" I confess that I can not very well comprehend the idea of
a waiver in such a case.   The right is absolute until the
juror is sworn, and yet it is said that the right may be
waived in a manner which will deprive the prisoner of the
right to resume it, though the fact which bars the right has
not yet happened.   Upon what principle is he estopped?
For it comes to this: he is to be barred or estopped by rea-
son of something he has done.   My judgment will not
assent to this view.   It seems to me a dangerous innovation
of a clear and absolute right secured to the prisoner."

It is conceded that under our law " the right is absolute
until the juror is sworn," and yet it is said here, as it was

said in that case, "that it may be waived in a manner which will deprive the prisoner of the right to resume it, though the fact which bars the right has not yet happened." I confess I can not very well, or at all, comprehend the idea.

The only case cited by Justice Hawley which involves the question before us, even by implication, is *Commonwealth* v. *Marra and Dougherty*, 8 Phila. 440. In that case a peremptory challenge was interposed to a juror after he had stood up, by order of the court, to affirm. The challenge was refused, upon the ground that standing up to affirm is the same thing as "coming to the book" to be sworn, and the rule is universal that when the juror "comes to the book" by direction of the court, he is *sworn* in the legal acceptance of the term. (1 Bishop Cr. Pro. 945.) The pains taken by the court in that case to prove that the commencement of the formula of affirmation cut off the right to challenge the juror, proves by the strongest sort of implication that otherwise it must have been allowed. So far, therefore, as it is authority, it is against the action of the district court in this case, for at the time Appleburg was challenged no juror had been sworn or ordered sworn.

But it is contended that, inasmuch as the practice act enjoins the swearing of jurors in criminal cases separately, as they are passed, the only error of the court was in not so swearing them:

It is true that the statute contemplates the practice indicated, and I agree that it does not permit the court, in its mere discretion and in spite of objection, to pursue another course. But if neither party objects, it is not error in the court to postpone swearing the jurors until the jury is complete, and it is often no less convenient than acceptable to the parties to do so. But if this deviation is made from the rule of the statute, the right of the parties to challenge peremptorily is necessarily prolonged, for under the law nothing but the swearing of the jurors cuts it off.

The argument that because by swearing the jurors as they were passed, the right to challenge Appleburg could have been cut off, it could therefore be cut off by a rule of the court without swearing them, might be of some· force if the

situation of the defendant would have been the same in either case.

But this is far from being true. For, in the first place, if the jurors had been sworn as they were passed, not only would the defendant have lost the right to challenge Appleburg, but the state would have lost its right to challenge any of the others; whereas, by the course pursued, the right of the state to challenge any of the jurors in the box remained unaffected while that of the defendant was absolutely cut off.

In the second place, the swearing of the jurors passed would have made it the imperative duty of the court to keep them together, in custody of a sworn officer, from that time till the end of the trial. (Comp. L. 2004.)

The same act which, under the statute, cuts off further opportunity to challenge jurors gives to the defendant the absolute right to require that they shall be kept together and beyond the reach of any improper influence. And this right is deemed so important that a failure to keep the jurors in such custody is *prima facie* cause for a new trial, and casts upon the state the burden of proving that no prejudice did or could have ensued. (*State* v. *Harris*, 12 Nev. 422.)

It thus appears that under the practice prescribed by the statute, and which the court could have followed if it had chosen to do so, the right of each party to challenge would have been cut off at the same time, while here it was not, and, what is of still more importance, the defendant would have had secured to him a means of protection which is, and was designed to be, strictly correlative to the loss of the further right of challenge. For these reasons I maintain that the practice prescribed by the statute does not authorize such proceedings as were had in this case, and I concur in the order of reversal.