*Hallam & Myers, for appellant.*

---

BEN CLOUD *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 7—818.]

**Evidence in Homicide Case.**

On an indictment for murder the admissions of other persons than the accused that they did the killing are not evidence; and neither are threats to kill made by other persons evidence in such a case.

**Declarations of Coconspirators.**

The declaration of a coconspirator made after the killing in a murder case, not a part of the transaction, and made after the aim of the conspiracy has been accomplished, is not admissible as evidence against other conspirators.

APPEAL FROM HARLAN CIRCUIT COURT.

May 1, 1886.

OPINION BY JUDGE HOLT:

At a time not definitely fixed by the testimony, save that it was between noon and three o'clock of April 30, 1884, John Napier, while

at work in a field, was without warning, so the evidence discloses, shot and killed. There can be no question as to the guilt of persons who thus took human life. The appellant, Ben Cloud, together with nine other persons, was charged with the deed, the indictment charging a conspiracy among them to do the killing; and he, having obtained a separate trial, now seeks by this appeal to reverse a life sentence. It appears that the deceased and the defendants were neighbors; and from some cause not shown in the record they had become hostile to each other. Upon the day prior to the killing, several of the Napiers were at the house of a justice of the neighborhood to attend an examining trial of the deceased upon the charge of burning the appellant's house. The defendants were also there, all of them being armed. The testimony shows that they were then acting in concert, and evidently each party was expecting and ready for a collision. The parties finally separated, however, without having any open difficulty, and the next day the deceased, while earning his bread by the sweat of his face, was shot by a person or persons upon the hill above where he was at work.

Two brothers of the deceased and the wife of one of them were at work with him, but in other parts of the field. One brother testifies that he saw the appellant and two other of the defendants in the field with guns and started to go to his brother; but one of them pointed his gun at him, while the other two went toward the deceased; and they being between him and the deceased, he turned and ran in the opposite direction. The other brother and his wife testify that when they heard the firing they ran to or near the place where the deceased had been at work, and saw the appellant and two of the defendants upon the hill above, but going away. Another witness says that he saw the same parties a short time before the killing within a fourth of a mile of the place where it occurred and going in that direction. They were seen by other parties about ten or eleven o'clock in the forenoon; and then went in the direction where the killing took place. All of these witnesses say that, when the appellant and the other two defendants were thus seen, they or at least some of them had guns.

The defense of the appellant was an alibi. He did not offer to introduce any of his codefendants as witnesses; but to establish it relied upon the evidence of his sister-in-law and a sister of Richmond Pace, who was also indicted with him and who, as some of the

witnesses for the commonwealth say, was one of the three men along when the killing occurred. The first testifies that these three men were at Morgan Wynn's, which is about a mile and a half from the scene of the killing, from, as she supposes, noon until three o'clock in the afternoon of the day of the killing, engaged in log rolling. The exact time of the tragedy, however, is not fixed by the witnesses. The other testifies that the three defendants whom the witnesses for the state say were present at the killing were upon that day at work at the log rolling. It is needless to review the testimony further in order to consider the questions now presented. The whole law of the case was given to the jury. No question of self-defense or manslaughter was presented. The accused relied upon an alibi. If true, then, it was impossible that the deceased could have been provoking his passion or endangering his life.

The appellant proposed to prove that a man living in Virginia had, shortly before the killing, said that he intended to kill deceased. The ruling of the court in rejecting this proof was proper. On an indictment for murder the admissions of other persons that they did the killing are not evidence, and equally is this true as to threats by other persons to do it. Wharton's Crim. Evid., § 225; *Thomas v. People,* 67 N. Y. 218; *People v. Murphy,* 45 Cal. 137. It is urged, however, that certain statements made by some of the defendants, when not in the presence of the appellant, were incompetent. Thus the state was allowed to prove by one witness that the defendant, Richmond Pace, said about two weeks before the killing that "John Napier had better watch or he would get his head busted"; by another, that the defendant, Ben Wynn, said on the day the deceased was killed that "John Napier would be seen by some man at every point that day"; by another that the defendant, Green Cloud, had said (when does not appear) that "John Napier had thrown a rock at him and if he did it any more he would kill the G— d— Indian"; by another, that some time after the killing, he asked the defendant, Acles Wynn, if when he heard the firing he saw any one, and that he replied: "Yes, I saw Richmond Pace run from off the ridge."

The lower court was probably of the opinion that a conspiracy to kill the deceased had been shown and therefore admitted these statements. It is, however, unnecessary to determine this question. Clearly what Richmond Pace may have said was competent testimony, because the Commonwealth witnesses had already testified

that he and the appellant were two of the three men engaged in the killing. It was also admissible upon the part of the state to show that the deceased had been arrested upon the charge of burning the house of the accused and that the latter was prosecuting the charge, as bearing upon the question of ill feeling between them or incentive to injure each other. The statement of Acles Wynn was undoubtedly incompetent. Admitting that a conspiracy to kill the deceased had been proved, yet it was not made until after the killing, and the declaration of a coconspirator is not competent after the aim of the conspiracy has been accomplished. In our opinion, however, formed after a careful examination of the record, the substantial rights of the appellant were not prejudiced by its introduction, nor by the testimony relating to what had been said by Wright and Ben Wynn and Green Cloud. The statements of the last three named persons in no way related to the appellant, and could not to any extent whatever have influenced the jury to believe that the accused was guilty.

Judgment *affirmed.*

*Jas. D. Black, J. H. Tinsly, for appellant.*

*P. W. Hardin, J. M. Unthank, for appellee.*